[842 NE2d 471, 808 NYS2d 573]

AG CAPITAL FUNDING PARTNERS, L.P., et al., Plaintiffs, v STATE STREET BANK AND TRUST COMPANY, Defendant and Third-Party Plaintiff-Appellant. SALOMON SMITH BARNEY INC. et al., Third-Party Defendants-Respondents.

Argued October 18, 2005; decided November 17, 2005

**POINTS OF COUNSEL**

*Kelley Drye & Warren LLP,* New York City (*Steven P. Caley, John M. Callagy* and *Robert S. Friedman* of counsel), for third-party defendant-appellant. I. The First Department order should be reversed because it is in conflict with long-standing New York law and the provisions of the federal Trust Indenture Act, which strictly limit the predefault duties of an indenture trustee. (*Apfel v Prudential-Bache Sec.,* 81 NY2d 470; *Curtis Props. Corp. v Greif Cos.,* 212 AD2d 259; *Hazzard v Chase Natl. Bank of City of N.Y.,* 159 Misc 57, 257 App Div 950, 282 NY 652; *Elliott Assoc. v J. Henry Schroder Bank & Trust Co.,* 838 F2d 66; *Meckel v Continental Resources Co.,* 758 F2d 811; *LNC Invs., Inc. v First Fid. Bank, N.A.,* 935 F Supp 1333; *New York State Med. Care Facilities Fin. Agency v Bank of Tokyo Trust Co.,* 163 Misc 2d 551, 216 AD2d 126.) II. The First Department committed legal error in holding that the term "delivering" as used in the additional secured indebtedness registration statement was unambiguous. (*67 Wall St. Co. v Franklin Natl. Bank,* 37 NY2d 245; *Haber v St. Paul Guardian Ins. Co.,* 137 F3d 691; *Pikul v Clough, Harbour & Assoc.,* 190 AD2d 932; *Matter of Aerotech*

*World Trade v Excalibur Sys.*, 236 AD2d 609; *Federated Mut. Ins. Co. v Woodstock '99, LLC,* 140 F Supp 2d 225; *Thomas v Scutt,* 127 NY 133; *Zurakov v Register.Com, Inc.,* 304 AD2d 176.) III. The First Department order, affirming dismissal of State Street Bank and Trust Company's attorney malpractice and negligent misrepresentation claims, affirmed an erroneous legal standard and directly conflicts with decisions of this Court. (*Rovello v Klein,* 304 AD2d 638; *Hudson Riv. Club v Consolidated Edison Co. of N.Y.,* 275 AD2d 218; *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377; *Vereins-Und Westbank, AG v Carter,* 691 F Supp 704.) IV. The First Department's dismissal of State Street Bank and Trust Company's negligence and contribution claims was in error because State Street's amended third-party complaint adequately pleaded that third-party defendants assumed a duty to deliver any additional secured indebtedness registration statement to Bankers Trust Company. (*Heard v City of New York,* 82 NY2d 66; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Nolton v Western R.R. Corp.,* 15 NY 444; *Bartels v County of Westchester,* 76 AD2d 517; *Rockwell v State of New York,* 32 Misc 2d 167, 19 AD2d 946.) V. The First Department erroneously dismissed State Street Bank and Trust Company's contribution causes of action. (*Sommer v Federal Signal Corp.,* 79 NY2d 540; *Comi v Breslin & Breslin,* 257 AD2d 754; *Regan v Eight Twenty Fifth Corp.,* 287 NY 179; *Schauer v Joyce,* 54 NY2d 1; *Guzman v Haven Plaza Hous. Dev. Fund Co.,* 69 NY2d 559; *Garrett v Holiday Inns,* 58 NY2d 253; *Trustees of Columbia Univ. v Mitchell/ Giurgola Assoc.,* 109 AD2d 449.)

*Cleary Gottlieb Steen & Hamilton LLP,* New York City (*Mitchell A. Lowenthal, David H. Herrington, Karen Bekker* and *David Lehn* of counsel), for Salomon Smith Barney Inc., third-party defendant-respondent. I. State Street Bank and Trust Company undertook a contractual duty to deliver the additional secured indebtedness registration statement to Bankers Trust Company. (*Nau v Vulcan Rail & Constr. Co.,* 286 NY 188; *This Is Me, Inc. v Taylor,* 157 F3d 139; *Kurz v United States,* 156 F Supp 99, 254 F2d 811; *Ortelere v Teachers' Retirement Bd. of City of N.Y.,* 25 NY2d 196; *Rudman v Cowles Communications,* 30 NY2d 1; *Apfel v Prudential-Bache Sec.,* 81 NY2d 470; *Weiner v McGraw-Hill, Inc.,* 57 NY2d 458; *New York State Med. Care Facilities Fin. Agency v Bank of Tokyo Trust Co.,* 163 Misc 2d 551, 216 AD2d 126; *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157; *R/S Assoc. v New York Job Dev. Auth.,* 98 NY2d 29.) II. Salomon Smith Barney Inc. had no duty to deliver the additional secured indebted-

ness registration statement. (*Lauer v City of New York*, 95 NY2d 95; *Espinal v Melville Snow Contrs.*, 98 NY2d 136; *Peters v Veemac El. Co.*, 182 AD2d 534; *532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280; *A.H.A. Gen. Constr. v New York City Hous. Auth.*, 92 NY2d 20; *Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222; *Pulka v Edelman*, 40 NY2d 781; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507; *Heard v City of New York*, 82 NY2d 66.)

*Allen & Overy LLP*, New York City (*Michael S. Feldberg, Jacob S. Pultman, Kelly A. Berkell, Karen Lee* and *Nicole K. Avallone* of counsel), for Thelen Reid & Priest LLP, third-party defendant-respondent. I. Thelen Reid & Priest LLP owes no legal duty to State Street Bank and Trust Company, and dismissal of State Street's claims for negligence, negligent misrepresentation and attorney malpractice was therefore proper. (*Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377; *LNC Invs., Inc. v First Fid. Bank, N.A.*, 935 F Supp 1333; *Alpert v Shea Gould Climenko & Casey*, 160 AD2d 67; *National Westminster Bank v Weksel*, 124 AD2d 144; *Lucas v Lalime*, 998 F Supp 263; *Harz v United States*, 711 F Supp 114; *King v Schonberg & Co.*, 233 AD2d 242; *Weiss v Manfredi*, 83 NY2d 974; *Rovello v Klein*, 304 AD2d 638; *Hudson Riv. Club v Consolidated Edison Co. of N.Y.*, 275 AD2d 218.) II. As indenture trustee, State Street Bank and Trust Company was obligated to deliver the additional secured indebtedness registration statement. (*New York State Med. Care Facilities Fin. Agency v Bank of Tokyo Trust Co.*, 163 Misc 2d 551, 216 AD2d 126; *Beck v Manufacturers Hanover Trust Co.*, 218 AD2d 1; *Semi-Tech Litig., LLC v Bankers Trust Co.*, 353 F Supp 2d 460; *LNC Invs., Inc. v First Fid. Bank, N.A.*, 935 F Supp 1333; *Hazzard v Chase Natl. Bank of City of N.Y.*, 159 Misc 57, 258 AD2d 950, 282 NY 652; *Elliott Assoc. v J. Henry Schroder Bank & Trust Co.*, 838 F2d 66; *Meckel v Continental Resources Co.*, 758 F2d 811; *United States Trust Co. of N.Y. v First Natl. City Bank*, 57 AD2d 285.) III. Dismissal of State Street Bank and Trust Company's contribution claim was proper because Thelen Reid & Priest LLP did not owe any legal duty to plaintiffs or to State Street. (*LNC Invs., Inc. v First Fid. Bank, N.A.*, 935 F Supp 1333; *Aglira v Julien & Schlesinger*, 214 AD2d 178; *Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21; *Dormitory Auth. of State of N.Y. v Caudill Rowlett Scott*, 160 AD2d 179.)

*Covington & Burling*, New York City (*C. William Phillips*,

*Jonathan M. Sperling* and *Stephanie Yu* of counsel), for UBS Warburg LLC, third-party defendant-respondent. I. State Street Bank and Trust Company's allegations of industry custom cannot create a duty of care. (*Heard v City of New York,* 82 NY2d 66; *M & E Mfg. Co. v Frank H. Reis, Inc.,* 258 AD2d 9; *De Kwiatkowski v Bear, Stearns & Co., Inc.,* 306 F3d 1293; *Florida Fuels, Inc. v Citgo Petroleum Corp.,* 6 F3d 330; *Klimstra v State Farm Auto Ins. Co.,* 891 F Supp 1329; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Eiseman v State of New York,* 70 NY2d 175; *Phillips v McClellan St. Assoc.,* 262 AD2d 748; *O'Connor v 595 Realty Assoc.,* 23 AD2d 69; *Trimarco v Klein,* 56 NY2d 98.) II. State Street Bank and Trust Company does not state a cause of action against UBS Warburg LLC based on the alleged statements of UBS's counsel. (*Heard v City of New York,* 82 NY2d 66; *Roland Pietropaoli Trucking v Nationwide Mut. Ins. Co.,* 100 AD2d 680; *Kimmell v Schaefer,* 89 NY2d 257; *WIT Holding Corp. v Klein,* 282 AD2d 527; *United Safety of Am. v Consolidated Edison Co. of N.Y.,* 213 AD2d 283; *Williams v State of New York,* 90 AD2d 861; *Eternity Global Master Fund v Morgan Guar. Trust Co.,* 375 F3d 168; *Zelber v Lewoc,* 6 AD3d 1043; *Tradewinds Fin. Corp. v Refco Sec.,* 5 AD3d 229; *Adams v Clark,* 239 NY 403.) III. State Street Bank and Trust Company contractually undertook to deliver the additional secured indebtedness registration statement to the collateral trustee. (*W.W.W. Assoc. v Giancontieri,* 77 NY2d 157; *Michael J. Torpey, Inc. v Consolidated Edison Co. of N.Y.,* 99 AD2d 484; *Chimart Assoc. v Paul,* 66 NY2d 570; *Uribe v Merchants Bank of N.Y.,* 91 NY2d 336; *Merrill Lynch, Pierce, Fenner & Smith v Adler,* 234 AD2d 139; *Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.,* 63 NY2d 396; *Hallmark Synthetics Corp. v Sumitomo Shoji N.Y.,* 26 AD2d 481; *Sbarra v Totolis,* 191 AD2d 867; *Weiner v McGraw-Hill, Inc.,* 57 NY2d 458; *Apfel v Prudential-Bache Sec.,* 81 NY2d 470.)

*Kasowitz, Benson, Torres & Friedman LLP,* New York City (*James J. Stricker, Ronald R. Rossi* and *Matthew R. DiBlasi* of counsel), for plaintiffs. I. The question presented by State Street Bank and Trust Company has no bearing on whether State Street has properly stated a claim against the third-party defendants. (*Lunney v Prodigy Servs. Co.,* 94 NY2d 242; *Cuomo v Long Is. Light. Co.,* 71 NY2d 349; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761.) II. Even assuming arguendo that the Court considers State Street Bank and Trust Company's first question, there is no legal or factual basis for any holding by this Court that, as a matter of law, State Street was not obli-

gated to deliver the additional secured indebtedness registration statement to the collateral trustee. (*Beck v Manufacturers Hanover Trust Co.,* 218 AD2d 1; *LNC Invs. v First Fid. Bank,* 935 F Supp 1333; *Semi-Tech Litig., LLC v Bankers Trust Co.,* 353 F Supp 2d 460; *New York State Med. Care Facilities Fin. Agency v Bank of Tokyo Trust Co.,* 216 AD2d 126; *Hazzard v Chase Natl. Bank of N.Y.,* 159 Misc 57; *Meckel v Continental Resources Co.,* 758 F2d 811; *Elliott Assoc. v J. Henry Schroder Bank & Trust Co.,* 838 F2d 66; *New York Civ. Liberties Union v State of New York,* 4 NY3d 175; *Tango v Tulevech,* 61 NY2d 34; *In re Nucorp Energy Sec. Litig.,* 772 F2d 1486.) III. State Street Bank and Trust Company's unsubstantiated speculation that the First Department's holding will likely lead to disruption and uncertainty in the market for issuance of debt securities is unfounded and without merit. (*Hines v Davidowitz,* 312 US 52; *New York State Med. Care Facilities Fin. Agency v Bank of Tokyo Trust Co.,* 163 Misc 2d 551; *LNC Invs., Inc. v First Fid. Bank, N.A.,* 935 F Supp 1333; *Williams v Continental Stock Transfer & Trust Co.,* 1 F Supp 2d 836; *Semi-Tech Litig., LLC v Bankers Trust Co.,* 353 F Supp 2d 460.)

**OPINION OF THE COURT**

CIPARICK, J.

Because an underwriter or issuer of securities can, by statements and acts interpreted in light of industry custom and practice, assume a duty that may be imposed upon a secured party representative or indenture trustee, and because such allegations are adequately pleaded in a third-party complaint and supplemental documentary evidence, we reinstate causes of action for negligence and contribution brought by the secured party representative/indenture trustee against the underwriters and the issuer's counsel.

Loewen Group International, Inc. and Loewen Group, Inc. (collectively Loewen), owner and operator of cemeteries and funeral homes throughout the United States, United Kingdom and Canada, issued notes and other debt securities to raise capital in several transactions in the late 1990s. All of the debt securities were to be supported by a single pool of collateral. The transactions at issue in this case involved securities known as pass-through asset trust securities (PATS) and Series 6 and 7 Notes, but the earlier transactions are relevant as background.

The first of the debt securities, consisting of Series 1 and 2 Notes, were already in existence prior to a May 1996 Collateral

Trust Agreement (CTA). The CTA, entered into between Loewen Group and Bankers Trust Company (Bankers Trust), established the pool of assets intended to secure the debt offerings, and provided that Bankers Trust would serve as collateral trustee of the pool. The agreement explicitly secured the Series 1 and 2 Notes, and provided a mechanism for holders of future debt offerings to acquire secured-creditor status. The CTA provides for the delivery by such holders, or their representative—called a secured party representative—of a document called an additional secured indebtedness registration statement (ASIRS) to Bankers Trust. The ASIRS was to be signed by Loewen and the holder or secured party representative. The CTA provided: "To become a Secured Party Representative hereunder each such representative or Holder must deliver to the Trustee, for acceptance and registration in the Secured Indebtedness Register, an Additional Secured Indebtedness Registration Statement . . . ."

The Series 3 and 4 Notes were the first debt issued by Loewen after the effective date of the CTA. Salomon Smith Barney (Salomon) served as lead underwriter and was represented by Davis Polk & Wardwell (Davis Polk) at the closing. Thelen Reid & Priest LLP (Thelen) served as counsel for Loewen, the issuer. A copy of the executed ASIRS for this transaction was faxed to Bankers Trust, the collateral trustee, by Thelen on October 4, 1996. A predecessor in interest of third-party plaintiff, State Street Bank and Trust Company (State Street), was the indenture trustee under the indenture and the secured party representative as defined in the CTA.

The Series 5 Notes were issued on September 26, 1997. These notes were also secured by the CTA. An executed copy of the ASIRS was delivered by Loewen's Canadian counsel, Russell & DuMoulin, to Bankers Trust at the close of that transaction. State Street was not involved in the Series 5 Notes transaction.

The problem with the transactions involved in this case—the PATS, Series 6 Notes and Series 7 Notes—is that, in each of them, the ASIRS did not find its way to Bankers Trust.

PATS in the amount of $300,000,000 were issued on September 30, 1997. UBS Warburg (UBS) was the lead underwriter in that transaction, represented by Skadden, Arps, Slate, Meagher & Flom LLP (Skadden), who hosted the closing. State Street again served as the indenture trustee and thus was the secured

party representative, as defined in the CTA and ASIRS.[1] Thelen, counsel for the issuer, drafted the ASIRS, which was then signed by Loewen and State Street and left at Skadden's office at the closing along with the other closing documents. An attorney from Skadden, UBS's counsel, later said that a Skadden associate had delivered the ASIRS to Bankers Trust, but he thereafter retracted the statement. No record exists of the ASIRS having been delivered to Bankers Trust for the PATS transaction.

The Series 6 and 7 Notes involved essentially the same parties and procedures as the Series 3 and 4 Notes. Salomon served as the lead underwriter on this $450,000,000 transaction, again represented by Davis Polk. Loewen was again represented by Thelen, and State Street again accepted the role of indenture trustee pursuant to the May 28, 1998 indenture and secured party representative under the CTA. The closing took place on May 28, 1998 but Davis Polk, the closing host, failed to place the ASIRS on the closing checklist. Thelen, realizing this omission post-closing, circulated a copy of the ASIRS for signature.[2] Loewen and State Street both signed the document and returned it to Thelen. Thelen then faxed a copy of the executed ASIRS signature page to Davis Polk on June 1, 1998. State Street did not receive a copy of the fully executed ASIRS. Bankers Trust has no record of receiving or recording the ASIRS for the Series 6 and 7 Notes transaction.

In June 1999, Loewen, represented by Jones, Day Reavis & Pogue (Jones Day), filed for chapter 11 bankruptcy. Because no ASIRS had been filed for the PATS and the Series 6 and 7 Notes, there was doubt as to whether the investors and holders of those instruments had the secured-creditor status they had expected. In the reorganization proceeding, investors settled their claims against Loewen by accepting a discounted value for the notes. The investors then commenced this lawsuit against State Street, claiming that State Street's failure to deliver the

---

1. The PATS ASIRS dated September 30, 1997 in relevant part states: "By executing and delivering this Additional Secured Indebtedness Registration Statement and, upon the acceptance and recordation hereof by the Trustee in accordance with . . . the Collateral Trust Agreement, State Street . . . as trustee under the indenture dated as of September 30, 1997 . . . hereby agrees on behalf of itself and the Holders it represents to be bound by all the terms and provisions of the [CTA] applicable to a Holder and a Secured Party Representative . . . ."

2. The language of the ASIRS associated with the Series 6 and 7 Notes is essentially the same as the language used for the PATS transaction.

ASIRS caused the investors to settle for "tens of millions of dollars" less than they would otherwise have received. The investors' action against State Street is still pending and is not directly an issue on this appeal, which only concerns State Street's third-party complaint against UBS, Salomon and Thelen.

In its third-party complaint, State Street asserts that in the event that it is found liable to the investors in the underlying proceeding, it may recover from the underwriters UBS and Salomon under four causes of action: negligence, common-law indemnity, contribution and unjust enrichment. State Street asserted the same four causes of action against Thelen, the issuer's counsel, but added as well claims for negligent misrepresentation and attorney malpractice. Each third-party defendant sought dismissal pursuant to CPLR 3211 (a) (1) and (7). Supreme Court granted the motions in part, dismissing all causes of action except for the contribution and negligence claims against all three third-party defendants.

Third-party defendants appealed. State Street also cross-appealed the dismissal of its attorney malpractice and negligent misrepresentation claims. The Appellate Division modified Supreme Court by dismissing the remaining causes of action (10 AD3d 293 [2004]). We granted leave to appeal and now modify and reinstate the contribution and negligence claims against UBS, Salomon and Thelen.

In deciding this appeal, we express no opinion on the merits of the underlying claims against State Street. We assume for purposes of this appeal that the claims are meritorious and consider whether, on that assumption, State Street has pleaded valid third-party claims.[3]

 To the extent that the Appellate Division held that the documentary evidence precluded State Street from prevailing on its contribution and negligence claims, the Court erred. In order to prevail on a CPLR 3211 (a) (1) motion, the moving

---

3. In dismissing the remaining causes of action the Appellate Division held that "State Street assumed the contractual obligation to deliver to Bankers Trust a registration statement for any additional secured indebtness" (10 AD3d at 294). This determination was premature and beyond the scope of the appeal, and may have had the unfortunate consequence of seeming to dictate the outcome of the underlying proceeding. The issue before this Court, as was the issue before the Appellate Division, is whether—assuming State Street had a duty to deliver the ASIRS—State Street has adequately pleaded that the underwriters or issuer's counsel assumed that duty.

party must show that the documentary evidence conclusively refutes plaintiff's (here third-party plaintiff's) allegations (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]). Assuming that the controlling documents in this case place the duty to file the ASIRS on State Street, these documents—the CTA, ASIRS and indentures—do not definitively refute State Street's allegations that the duty thereafter was assumed by the third-party defendants.

The Appellate Division also erred to the extent that it dismissed State Street's claims for contribution and negligence under CPLR 3211 (a) (7). When assessing the adequacy of a complaint in light of a CPLR 3211 (a) (7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide plaintiff (here third-party plaintiff) "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *see also Goshen*, 98 NY2d at 326). "Whether a [third-party] plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). Further, any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 635-636 [1976]). In this instance, for the purposes of assessing the third-party complaint, we are assuming that State Street had a duty to deliver the ASIRS, and need only address the allegations in the complaint that any such duty was assumed by UBS, Salomon and Thelen.

The amended third-party complaint alleges that UBS, by undertaking the role of underwriter for the PATS, and by its counsel agreeing to deliver the ASIRS to Bankers Trust, assumed a duty to "exercise reasonable care in running the closing and to ensure the PATS ASIRS was filed, delivered and/or registered with Banker's Trust."[4] In support of this allegation, State Street proffers an affidavit from William Barrett stating that based on his 40 years of experience in the field of corporate trusts and the over 300 closings involving indenture trusts that he attended he could not recall the indenture trustee ever making any filings. Instead he stated the "custom and practice within the corporate trust industry [is] that the issuer of the

4. The complaint further alleges that "UBS and Thelen breached their duty of care owed to State Street by, inter alia, failing to file, deliver, and/or register the PATS ASIRS with Banker's Trust" and further by failing to remedy the situation.

debt or its counsel and/or the underwriter or its counsel, file documents to record the security for debt collateral in connection with bond issuances." He also opined that the word "deliver" in the context of a closing means to leave executed documents at the closing table. State Street further points to a deposition taken as part of the Loewen bankruptcy proceeding of Thelen attorney Michelle Johnson. Ms. Johnson attested that the industry custom is that parties deliver documents to the closing table and the lawyer who is hosting the closing distributes the documents appropriately.

State Street also proffers evidence that a Skadden attorney claimed to have delivered the ASIRS in the PATS transaction. In particular, State Street offers a transcript of a voicemail in which a Skadden attorney discusses in vivid detail how a Skadden associate clearly remembered that he physically delivered the ASIRS to Bankers Trust. The text of the message is further corroborated by notes taken by Loewen's bankruptcy counsel, Jones Day, from its interviews of Skadden attorneys who took part in the transaction. While Skadden's claim that the ASIRS was actually delivered has since been retracted, the documentary evidence of Skadden's admissions is offered by State Street to supplement the allegation of the third-party complaint that UBS, through its counsel, assumed a duty to file the ASIRS.

Likewise, the third-party complaint as against Salomon alleges that Salomon, as lead underwriter of the Series 6 and 7 Notes debt offering, undertook through its counsel's actions the duty to deliver the ASIRS.[5] In addition to allegations of industry custom of placing the duty to distribute documents properly with the host of the closing, the third-party complaint supplemented by documentary evidence alleges Salomon's counsel's failure to include the ASIRS on the closing checklist. When the

---

**5.** The complaint alleges under the third cause of action, among other claims, that Salomon,

> "by agreeing to act as underwriter for the Series 6 and 7 Notes, owed a duty to all parties to the Series 6 and 7 Notes closing, including State Street, to exercise reasonable care in running the closing and to ensure that the ASIRS for the Series 6 and 7 Notes was filed, delivered and/or registered with Banker's Trust."

It further states that:

> "Salomon breached its duty of care owed to State Street by, inter alia, failing to put or have its agents/attorneys put the Series 6 and 7 Notes ASIRS on the Series 6 and 7 Notes closing checklist and thus, failing to have the ASIRS drafted and ready for execution at the closing, and failing to file, deliver and/or register the Series 6 and 7 Notes ASIRS with Banker's Trust."

error was discovered, Thelen immediately drafted an ASIRS and sent it by fax to the parties for signature. According to the Johnson deposition, after receiving the executed copies, Thelen sent a copy to Davis Polk, counsel for Salomon, with the "expectation that [it] would have been delivered appropriately." An investigation by Jones Day in the bankruptcy proceeding further verified this version of events as set forth in the Jones Day memorandum that was proffered by State Street in opposition to this motion to dismiss; the Jones Day memorandum reports that the Thelen attorney who drafted the ASIRS sent it to Davis Polk with the "expectation that Davis Polk would submit the document to the Collateral Trustee."

State Street further claims not only that custom and prior practice between the parties placed a duty to deliver the ASIRS on the underwriter, but also that it placed the duty on Thelen, counsel for the issuer. The allegation against Thelen is that it breached its duty of care by failing to register or assure that the ASIRS for the PATS and Series 6 and 7 transactions were duly registered. Third-party plaintiff supports this claim by documents indicating that Loewen's counsel—Thelen in the Series 3 and 4 transaction, and Russell & DuMoulin in the Series 5 transaction—recorded the ASIRS with Bankers Trust following the close of these transactions. Further, Ms. Johnson testified in her deposition that the Series 6 and 7 transaction had a "cookie cutter" resemblance to the Series 3 and 4 transaction in form and structure. In addition, State Street alleges that it never even received an executed copy of the ASIRS in the Series 6 and 7 transaction, just a blank copy that it was instructed to sign and return to Thelen. It alleges that Thelen made repeated representations that the debt was fully secured and ranked equally with the other Loewen secured debt, pointing to the April 16, 1999 letter from Michelle Johnson, where she states that "the Series 1 through 4 and 6 and 7 senior notes issued by Loewen Group International, Inc. are secured indebtedness under the Collateral Trust Agreement." All the notes, she continues, are "Class C Secured Indebtedness."

State Street argues that the aforementioned actions in conjunction with industry custom and practice demonstrate how any duty it may have owed to the investors or subsequent holders of the notes was assumed by UBS, Salomon and Thelen. Third-party defendants argue that they never assumed such a duty, nor may custom be used to impose such an obligation. They further state that the Court is precluded from finding a

prevailing custom because the custom as alleged is not specific enough to place them on notice. This appeal concerns a motion addressed to the pleadings, prior to discovery; it would therefore be premature to dispense with liability against any of these parties at this time as a nexus of control and obligation to the documents at issue has been adequately set forth in the pleadings. At this point, the Court can only address whether a cause of action exists, not whether it is likely to succeed (*see EBC I, Inc.*, 5 NY3d at 19).

We agree with State Street that its allegations of industry practice give support to its claim (*see e.g. Phillips v McClellan St. Assoc.*, 262 AD2d 748, 749 [3d Dept 1999] [stating that "evidence of industry practice and standards is admissible to establish a duty of care"]). Further, a course of conduct that induces reliance, as alleged here, may implicate a duty of care (*see e.g. Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 522-523 [1980]). The industry custom as set forth in the supplemental evidentiary materials, coupled with the parties' conduct, supports a claim that the third-party defendants together or in part assumed that duty. The pleadings allege that the third-party defendants did not act reasonably in relation to such duty.

Accepting the allegations in the third-party complaint as true, as we must at this preliminary pleading stage, as supplemented by the additional evidence submitted, we conclude that if State Street is found to have breached a duty and is held liable in the underlying action for failure to deliver the ASIRS to Bankers Trust then each of the third-party defendants may be liable as well. The third-party complaint has sufficiently pleaded a cause of action for negligence as it is alleged that all three third-party defendants assumed the duty that State Street may have had to act in relation to the delivery and filing of the ASIRS. Contrary to the dissenting view, we see no basis for treating Thelen differently at this point, as the submissions more than adequately support a cause of action against Thelen for negligence.

We turn next to State Street's cause of action seeking contribution. A claim for contribution rises and falls based on the existence of separate tortfeasors (*see* CPLR 1401, 1403; *see also Sommer v Federal Signal Corp.*, 79 NY2d 540, 557 [1992]). As State Street has sufficiently pleaded a claim of negligence against UBS, Salomon and Thelen, the claim of contribution against those parties also survives the motion to dismiss and may be predicated on a breach of duty to plaintiff or defendant and third-party plaintiff.

■ As to the allegations against Thelen for attorney malpractice and negligent misrepresentation we agree with the Supreme Court and Appellate Division in their conclusion that no cause of action lies. In assessing the adequacy of a claim of negligent misrepresentation or attorney malpractice, a court must first look to the relationship of the parties. Where the relationship of the parties fails to reveal actual privity or a relationship that otherwise closely resembles privity, no cause of action exists for negligent misrepresentation (*see Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 424 [1989]). In terms of attorney malpractice, absent privity, plaintiff must set forth a claim of "fraud, collusion, malicious acts or other special circumstances" in order to maintain a cause of action (*Estate of Spivey v Pulley*, 138 AD2d 563, 564 [2d Dept 1988]; *see also Good Old Days Tavern v Zwirn*, 259 AD2d 300 [1st Dept 1999]; *Mills v Dulin*, 192 AD2d 1001, 1003 [3d Dept 1993]; *Bluntt v O'Connor*, 291 AD2d 106, 114 [4th Dept 2002]).

Clearly there was no actual privity between Thelen and State Street. Thelen served as counsel for Loewen, who was not by any means unified in interest with State Street, the latter being the agent of the holders. Nor could it be said that the relationship closely resembled privity. As such, no claim for negligent misrepresentation lies. The claim for attorney malpractice also fails as State Street does not set forth a claim for fraud or collusion or any of the other exceptions to the privity rule. This was a rather complex transaction involving sophisticated parties and their counsel. Any misrepresentations or misunderstandings as pleaded do not give rise to a claim of attorney malpractice or negligent misrepresentation absent a showing of a privity-like relationship.

In conclusion, at this early stage of the action, the third-party complaint must be allowed to proceed as third-party plaintiff, State Street, has adequately pleaded causes of action in negligence and contribution against the underwriters and counsel for the issuer for failure to deliver the ASIRS as required to Bankers Trust, the collateral trustee, in the PATS and Series 6 and 7 Notes transactions.

Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the negligence and contribution causes of action in the third-party complaint against all third-party defendants, and as so modified, affirmed.

R.S. Smith, J. (dissenting in part). I agree with the majority opinion, in result and reasoning, except that I would dismiss the third-party complaint against Thelen, because I think the third-party complaint (as supplemented by documentary evidence) does not adequately allege that Thelen was at fault for the nondelivery of the ASIRS.

As the majority explains, we assume in this case (without deciding) that State Street had a duty to plaintiffs to make sure the ASIRS was delivered to Bankers Trust. The sufficiency of the third-party complaint turns on whether State Street has adequately alleged that the underwriters (UBS and Salomon) and the issuer's counsel, Thelen, undertook by their actions or words to perform this duty on State Street's behalf. To me, the record shows that if anyone made such an undertaking it was the underwriters, not Thelen.

An expert affidavit submitted by State Street says that, according to the custom of the corporate trust industry, documents like the ASIRS are filed by "the issuer of the debt or its counsel and/or the underwriter or its counsel." The affidavit thus provides no basis for saying whether it was Thelen or the underwriters who undertook the duty in these transactions. One indication that it was the underwriters is the simple fact that, in each of the transactions, the ASIRS wound up in the underwriter's counsel's possession. In the PATS transaction, the ASIRS was left with other closing documents at the underwriter's counsel's office. In the Series 6 and 7 Notes transaction, the ASIRS was prepared and signed after the closing, and then faxed by Thelen to the underwriter's counsel.

I agree with the majority that, from these facts, it is possible to infer that all parties, including State Street, were relying on the underwriters to deliver the ASIRS to its proper destination. But these facts cannot support an inference that anyone was relying on Thelen to perform that task. Nor do the later statements by counsel for the underwriter in the PATS transaction, in which counsel seemed to assume that delivery of the ASIRS was something the underwriter's counsel should have taken care of, support an allegation that the delivery was Thelen's responsibility.

The only facts the majority refers to in support of its holding that the claim against Thelen may be maintained are: (1) that the issuer's counsel delivered the ASIRS to the collateral trustee in two prior, similar transactions; and (2) that Thelen signed letters saying that the Series 6 and 7 Notes were properly

secured. The first of these facts is, in my view, simply too flimsy to support an inference that Thelen undertook the duty to deliver the ASIRS in later transactions; one is not committed to do something forever, simply because one has done it twice. And Thelen's statements that the debt was secured, even assuming they were wrong, seem to me logically unconnected with the question of who was supposed to deliver the ASIRS.

Accordingly, I would affirm the Appellate Division's order to the extent that it dismissed the third-party complaint against Thelen.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO and READ concur with Judge CIPARICK; Judge R.S. SMITH dissents in part in a separate opinion in which Judge G.B. SMITH concurs.

Order modified, etc.